**BROWN KWON & LAM LLP**
William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YANLING CAO,<br>*on behalf of herself and others similarly situated,*<br><br>Plaintiff,<br><br>- against -<br><br>BAYSIDE18, L.L.C. d/b/a MASAAKI,<br><br>Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff YANLING CAO ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant BAYSIDE18, L.L.C., d/b/a Masaaki (hereinafter, "Masaaki" or "Defendant"), and alleges as follows:

## <u>INTRODUCTION</u>

1. Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendant: (1) unpaid overtime wages due to off-the-clock work, (2) unlawfully retained gratuities, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6 §§ 190 et seq., and Article 19 §§ 650 et seq., the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendant: (1) unpaid minimum wages due to an improper tip credit, (2) unpaid regular and overtime wages due to off-the-clock work, (3) unpaid spread-of-hours premium, (4) unlawfully misappropriated gratuities, (5) uniform pay violations, (6) unlawful wage deductions, (7) damages for untimely payment of wages, (8) statutory penalties, (9) liquidated damages, and (10) attorneys' fees and costs.

3. Plaintiff further brings this action on behalf of herself and similarly situated workers pursuant to the New York City Earned Safe and Sick Time Act, N.Y.C. Admin. Code §§ 20-911 et seq. ("ESSTA"), and Rule 23, seeking from Defendant: (1) unpaid safe and sick time, (2) statutory damages, and (3) attorneys' fees and costs.

4. Plaintiff further alleges, pursuant to the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215, that Defendant terminated her employment in retaliation for complaining of Defendant's unlawful wage practices, and seeks from Defendant: (1) economic damages for lost wages, (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

6. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7. This Court has jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

***Plaintiff***

9. Plaintiff Yanling Cao is an adult who resides in Queens County, New York.

10. Plaintiff Yanling Cao is a covered employee within the meaning of the FLSA and NYLL.

11. Plaintiff Yanling Cao retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

***Defendant***

12. Defendant Bayside18, L.L.C. d/b/a Masaaki is a domestic limited liability company with a principal place of business located at 214-16 41st Avenue, Bayside, New York 11361 and an address for service of process in the State of New York located at 77-17 171st Street, Fresh Meadows, New York 11366.

13. At all relevant times, Defendant operated Masaaki through Bayside18, L.L.C.

14. At all relevant times, Bayside18, L.L.C had an annual dollar volume of sales in excess of $500,000.

15. Bayside18, L.L.C is a covered "employer" within the meaning of the FLSA and NYLL.

16. Bayside18, L.L.C employed Plaintiff and similarly situated employees.

17. At all relevant times, Bayside18, L.L.C maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

18. At all relevant times, Bayside18, L.L.C applied the same employment policies, practices, and procedures to all non-exempt employees at Masaaki.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

19. Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt, hourly employees employed at Masaaki, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

20. At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's common policies, practices, procedures and patterns with regards to their compensation, including its willful and repeated failure to pay Plaintiff and FLSA Collective Members the full and proper overtime wages for hours worked in excess of forty (40) per workweek and their policy of improperly misappropriating gratuities. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

21. All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

22. Defendant is aware or should have been aware that federal law required it to pay employees overtime wages for all eligible hours they work, and prohibits employers from improperly misappropriating gratuities.

23. For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendant's records.

**NEW YORK CLASS ACTION ALLEGATIONS**

24. Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt, hourly employees employed at Masaaki, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members"). The Class includes a subclass consisting of tipped Class Members who had their tips improperly misappropriated and/or were subject to an improper tip credit (the "Tipped Subclass"). Plaintiff brings the Fourth Cause of Action, the ESSTA claims, pursuant to Rule 23, on behalf of herself and a subclass consisting of all Class Members employed at Masaaki from the date that is two (2) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "ESSTA Subclass").

25. Excluded from the Class are Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

26. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendant's payroll and personnel records. The hours

assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendant's records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendant's records. Notice can be provided by means permissible under Rule 23.

27. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

28. Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

29. Plaintiff and Class Members were subject to the same practices of Defendant, as alleged herein, of (i) failing to pay wages for off-the-clock work, and (ii) improperly retaining gratuities, in violation of the NYLL. Plaintiff and the Tipped Subclass were subject to the same practices of Defendant, as alleged herein, of failing to pay minimum wage, in violation of the NYLL.

30. Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member.

31. Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

32. Plaintiff is able and willing to fairly and adequately protect the interests of Class Members, and has no interests antagonistic to Class Members.

33. Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

34. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

35. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

37. Defendant and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38. Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

a. Whether Defendant employed Plaintiff and Class Members within the meaning of the NYLL and ESSTA;

b. Whether Defendant was entitled to take a tip credit against the minimum wage for Plaintiff and the Tipped Subclass;

c. Whether Defendant provided Plaintiff and the Tipped Subclass with proper notice of the tip credit;

d. Whether Defendant required Plaintiff and the Tipped Subclass to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their shifts;

e. Whether Defendant failed to pay Plaintiff and Class Members regular or overtime wages for off-the-clock work;

f. Whether Defendant required Plaintiff and Class Members to clock out before completing their work;

g. Whether Defendant required Plaintiff and Class Members to work off the clock during their breaks;

h. Whether Defendant failed to pay Plaintiff and Class Members for mandatory staff meetings;

i. Whether Defendant failed to pay Plaintiff and Class Members spread-of-hours premium for workdays exceeding ten (10) hours;

j. Whether Defendant failed to pay Plaintiff and Class Members uniform maintenance pay;

k. Whether Defendant made unlawful deductions from the wages of Plaintiff and Class Members;

l. Whether Defendant failed to pay Plaintiff and Class Members on a weekly basis;

m. Whether Defendant unlawfully required Plaintiff and the Tipped Subclass to share their tips with employees who are not eligible to receive tips;

n. Whether Defendant kept accurate records of the amounts of tips earned by Plaintiff and the Tipped Subclass;

o. Whether Defendant provided Plaintiff and Class Members with proper wage notices and wage statements; and

p. Whether Defendant failed to provide Plaintiff and the ESSTA Subclass with paid safe and sick time under ESSTA.

## STATEMENT OF FACTS

***Unpaid Wages and Gratuities (Plaintiff, FLSA Collective Members and Class Members)***

39. Plaintiff Yanling Cao was hired by Defendant as a server on or around November 24, 2024. Plaintiff continued working for Defendant in this capacity until the termination of her employment on September 26, 2026. Throughout her employment, Defendant paid Plaintiff at a reduced tipped minimum wage rate, taking a "tip credit" against the full minimum wage. Specifically in 2024, Plaintiff was paid $10.65 per hour, in 2025 she was paid $11.00 per hour and in 2026 she was paid $11.35 per hour.

40. At all relevant times, the restaurant was managed on a day-to-day basis by Manager Raymond (LNU), Plaintiff's direct supervisor. Raymond (LNU) set employees' schedules,

assigned sections and side work, controlled employees' time records, and determined the amount of tips distributed to other departments.

41. Throughout her employment, Plaintiff generally worked five days per week, consisting of at least three double shifts and two half shifts. Plaintiff worked double shifts every Saturday and Sunday, and at least one additional double shift during the week. On weekdays, double shifts were scheduled from 11:00 a.m. until 9:50 p.m., the time at which Plaintiff was required to clock out. On weekends, double shifts were scheduled from 11:00 a.m. until 10:50 p.m. Half shifts were scheduled from 4:15 p.m. until closing, with no break, and Plaintiff was required to clock out at 9:50 p.m. Accordingly, after deducting the scheduled breaks described below, Plaintiff's recorded hours totaled approximately forty-two (42) hours per week.

42. Throughout the relevant period, Defendant engaged in a policy of time shaving, whereby Plaintiff, FLSA Collective Members, and Class Members were not paid for all hours worked, including overtime hours.

43. Namely, Defendant required Plaintiff, FLSA Collective Members and Class Members to clock out at a fixed time, 9:50 p.m. on weekdays and 10:50 p.m. on weekends, regardless of whether their work was complete. However, the restaurant regularly remained open past these times, and Plaintiff, FLSA Collective Members and Class Members were required to continue working, including serving remaining customers and performing closing duties, after they had been forced to clock out. On weekdays, Plaintiff generally did not leave until approximately 10:15 p.m. to 10:20 p.m. On half shifts, closing always extended past 9:50 p.m. At most, Plaintiff was able to leave at her clock-out time only once per week. Therefore, on at least four days per week, Plaintiff performed approximately twenty-five (25) to thirty (30) minutes of work off the clock for which she was not compensated.

44. Defendant further required Plaintiff, FLSA Collective Members and Class Members to clock out for a scheduled one hour and fifteen-minute break on double shifts. Breaks were staggered in two rounds, from 3:00 p.m. to 4:15 p.m. and from 4:15 p.m. to 5:30 p.m. Although employees were clocked out, they were required to remain at the restaurant during their breaks. Approximately forty percent (40%) of the time, Plaintiff's break was interrupted when customers arrived at the restaurant, and Plaintiff was required to work for approximately thirty (30) to forty (40) minutes of her break without being permitted to clock back in. In fact, on a number of occasions, managers would manually adjust Plaintiff's time records to reflect the full scheduled break, even though Plaintiff was only able to take at most approximately fifteen (15) minutes. Plaintiff was never compensated for this time.

45. Additionally, approximately once per week, Defendant required Plaintiff, FLSA Collective Members and Class Members to remain at the restaurant after closing, or before their scheduled shifts for around 30 to 45 minutes for a mandatory staff meeting. Despite this time being mandatory, Defendant failed and refused to compensate Plaintiff, FLSA Collective Members and Class Members for it.

46. Defendant's managers, including Raymond (LNU), also regularly called Plaintiff outside of her working hours, including at midnight and in the early morning, and kept her on the phone for up to thirty (30) minutes at a time regarding work-related matters. Defendant never compensated Plaintiff for this time.

47. Accordingly, in a typical week, Plaintiff worked at least approximately forty-four (44) hours, consisting of approximately forty-two (42) recorded hours, approximately one hour and forty minutes of post-clock-out work on at least four days, and at least thirty (30) minutes of mandatory staff meetings, exclusive of interrupted breaks and after-hours calls. All of this

uncompensated time was worked in excess of forty (40) hours per week, and Defendant failed to pay Plaintiff overtime wages for it.

48. Plaintiff's double shifts regularly spanned more than ten (10) hours from the beginning to the end of her workday. Over the course of her employment, Plaintiff worked approximately two hundred and fifty (250) double shifts. However, Defendant never paid Plaintiff and Class Members an additional hour of pay at the minimum wage rate for days on which their spread of hours exceeded ten (10) hours. Plaintiff made multiple requests to be paid spread-of-hours pay, all of which Defendant refused.

49. Throughout Plaintiff's employment, Defendant required Plaintiff and other tipped employees to perform substantial non-tipped side work, including, but not limited to, prepping salads and soup bowls, filling sauces for take-out orders, restocking and cleaning expo stations, moving clean plates to the server station, polishing flatware, and general cleaning. Much of this work was performed before the restaurant opened to customers and after the last customers left, when no tips could be earned. On each of her shifts, Plaintiff spent more than two (2) hours performing such non-tipped work, which exceeded two hours or twenty percent (20%) of her shift, whichever is less. Nevertheless, Defendant continued to take a tip credit against the full minimum wage for all hours worked by Plaintiff and the Tipped Subclass, in violation of 12 N.Y.C.R.R. § 146-2.9.

50. Moreover, when Plaintiff and other tipped employees failed to complete their assigned side work, Defendant punished them by reducing their share of the tip pool for that shift. These deductions ranged from ten percent (10%) to thirty percent (30%) of the employee's share of tips for the day. For example, if a server forgot to restock sauces, Defendant would reduce that

server's share to eighty percent (80%), while the other servers on the shift received a full share. Defendant made such deductions from Plaintiff's tips multiple times, throughout her employment.

51. Defendant made these deductions without any notice or explanation to the affected employees. Tipped employees, including Plaintiff, repeatedly complained to Defendant about the deductions after comparing their pay, to no avail. Only in or around July 2026, approximately two months before Plaintiff's termination, did Raymond (LNU) begin posting a sheet listing the daily deductions taken from tipped employees.

52. Defendant further failed to provide Plaintiff and Class Members with written notice of their rate of pay, the tip credit being claimed, and other information required under the NYLL, at the time of hiring or upon any change in their rate of pay. Plaintiff never received or signed a wage acknowledgment form.

53. Defendant required Plaintiff, FLSA Collective Members and Class Members to wear a uniform consisting of a button-down shirt. Defendant provided Plaintiff with only three to four uniform shirts, even though Plaintiff worked five days per week, including at least three double shifts. Defendant therefore failed to furnish a sufficient number of uniforms consistent with the number of days per week Plaintiff worked. As a result, Plaintiff was required to launder and iron her uniforms throughout the week at her own expense. Defendant never paid Plaintiff and Class Members uniform maintenance pay.

54. Throughout Plaintiff's employment, Defendant required Plaintiff and other tipped employees to pay out a substantial portion of their tips through a series of mandatory, stacked tip-outs set and controlled by Defendant. Many of these payments went to employees who are not eligible to receive tips, and others went directly to Defendant.

55. First, at the end of each shift, Defendant deducted ten percent (10%) of the servers' total tips for the sushi bar chefs. The sushi bar has no customer seating, and the sushi bar chefs do not interact with or serve customers. This deduction was calculated on the servers' total tips, including tips on alcoholic beverages and other items having nothing to do with the sushi bar, and typically amounted to $200 to $400 per night.

56. Servers were then required to tip out an additional eight percent (8%) of bar sales to the bartender. Because the ten percent (10%) sushi bar deduction had already been calculated on total tips, including tips on beverage sales, servers effectively paid out twice on the same alcohol sales.

57. Defendant also required servers to pay the omakase chefs $4 per person for every customer who ordered the tasting menu, an omakase set available to customers seated anywhere in the restaurant. Customers who ordered the tasting menu away from the omakase bar had no interaction with the omakase chefs. Defendant required servers to make this payment regardless of whether, or how much, the customer tipped. These payments amounted to approximately $400 or more per night.

58. For customers seated at the eleven-seat omakase bar, Defendant required servers to tip out forty-five percent (45%) of the tip to the omakase chefs, a percentage Defendant set and changed unilaterally, even though servers performed the substantial majority of the service to these customers, including taking orders, serving beverages, and processing payment. Defendant never provided servers with any records showing how these amounts were calculated or distributed.

59. In addition, Defendant deducted ten percent (10%) of the cash portion of the servers' tips each day, purportedly for the kitchen or the sushi bar, which amounted to approximately $30 to $50 per day. Defendant never disclosed where this money went.

60. Defendant also deducted four percent (4%) from all tips that customers paid by credit card. However, the actual processing fees Defendant paid on credit card transactions were approximately two and one-half percent (2.5%). Defendant retained the difference. Defendant never disclosed to Plaintiff or other tipped employees the actual fees it paid or how the deduction was calculated.

61. Defendant further required servers to pay a flat $50 to the house for each busser working the shift, regardless of how much the servers actually earned in tips that day. These payments were made to Defendant, not through the tip pool, and Defendant never accounted for how they were distributed. On slow days, these payments consumed a substantial portion of the servers' tips.

62. Raymond (LNU) unilaterally set and raised these tip-out amounts at his discretion, and did so repeatedly over the objections of tipped employees, including Plaintiff.

63. Moreover, Defendant intentionally failed and refused to provide Plaintiff, FLSA Collective Members and Class Members with records showing the breakdown of tips earned and the amounts deducted from their tips and distributed to other departments, despite requests from tipped employees, including Plaintiff. As a result, Plaintiff and other tipped employees never knew how much of their tips Defendant was taking, or for which department. Further, although Plaintiff received paychecks, a substantial portion of tips was distributed in cash, which, upon information and belief, Defendant failed to accurately record.

64. Defendant paid Plaintiff and Class Members on a bi-weekly basis. However, Plaintiff and Class Members spent more than twenty-five percent (25%) of their working time performing physical labor, including standing and walking throughout their shifts, carrying trays

and dishes, running food, cleaning, and performing kitchen side work. Plaintiff made multiple requests to be paid weekly, as required by law, all of which Defendant denied.

65. Defendant also failed to provide Plaintiff and Class Members with paid sick leave as required under New York State and New York City law. During her employment, Plaintiff was forced to take more than ten (10) sick days without pay.

66. The wage statements Defendant provided to Plaintiff and Class Members were inaccurate because they failed to reflect all hours worked, the tip credit claimed, and the amounts deducted from their tips.

67. Defendant's failure to provide accurate wage notices and wage statements prevented Plaintiff and Class Members from determining whether they had been paid for all hours worked and whether Defendant was lawfully claiming a tip credit. It also prevented them from discovering the amounts improperly deducted from their tips and wages. As a result, Plaintiff and Class Members were deprived of wages and gratuities to which they were entitled and were unable to timely challenge Defendant's unlawful practices.

68. Based on Plaintiff's observations and conversations with co-workers at Masaaki, Defendant failed to pay Plaintiff, FLSA Collective Members and Class Members all due regular and overtime wages.

69. Based on Plaintiff's observations and conversations with co-workers at Masaaki, Defendant failed to track daily tips earned by Plaintiff, FLSA Collective Members and Class Members, and failed to keep accurate records thereof.

70. Based on Plaintiff's observations and conversations with co-workers at Masaaki, Defendant required Plaintiff and Class Members to share their tips with employees who are not entitled to receive tips under the FLSA and NYLL.

71. Defendant knowingly and willfully operated its business with a policy of failing to pay all due regular and overtime wages to Plaintiff, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

72. Defendant knowingly and willfully operated its business with a policy of distributing a portion of the tips that Plaintiff, tipped FLSA Collective Members and Class Members earned from customers to employees who are not entitled to receive tips under the FLSA and NYLL.

73. Defendant knowingly and willfully operated its business with a policy of failing to pay Plaintiff and Class Members spread-of-hours pay, uniform maintenance pay, and paid sick leave. It also made unlawful deductions from their wages and failed to provide them with proper wage notices and wage statements, in violation of the NYLL.

***Retaliation (Plaintiff Yanling Cao)***

74. Plaintiff Yanling Cao was an exemplary employee during her employment with Defendant. Plaintiff excelled in her position as one of the top servers and consistently received positive feedback from guests and her colleagues.

75. Throughout her employment, Plaintiff repeatedly complained to Defendant about its unlawful wage and hour policies. These complaints included Defendant's failure to pay weekly wages and spread-of-hours pay, its refusal to disclose tip-out calculations, and its mandatory tip-outs to the kitchen, the sushi bar and the omakase chefs, including the tip-out for tasting menu orders.

76. In response, Defendant repeatedly retaliated against Plaintiff. When Plaintiff declined to pick up extra shifts, stay late or come in early, work which as described above was

routinely uncompensated, Defendant cut her shifts. Defendant also assigned her the worst section, forced her to perform additional side work, and required her to run food as punishment.

77. On September 26, 2026, Plaintiff complained to Raymond (LNU) about the mandatory tip-out to the omakase chefs for tasting menu orders. In response, Raymond (LNU) stated, in sum and substance, that it was none of Plaintiff's business and that he would raise the tip-out whenever he pleased.

78. Later that same night, Defendant terminated Plaintiff's employment. Defendant provided Plaintiff with no explanation for her termination.

79. Plaintiff was thus terminated in direct retaliation for her complaints regarding Defendant's unlawful wage and hour policies and practices.

80. As a result of Defendant's retaliatory conduct, Plaintiff has suffered, and continues to suffer, lost income as well as severe emotional distress and mental anguish, including, but not limited to, depression, stress, anxiety, humiliation, and loss of self-esteem and self-confidence.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
***Violations of the Fair Labor Standards Act***
***(Plaintiff and FLSA Collective Members)***

81. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

82. The overtime and tip provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendant and protect Plaintiff and FLSA Collective Members.

83. Defendant failed to pay Plaintiff and FLSA Collective Members the full and proper overtime wages for all hours worked in excess of forty (40) per workweek, in violation of the FLSA.

84. Defendant failed to pay wages to Plaintiff and FLSA Collective Members for off-the-clock work, in violation of the FLSA.

85. Defendant failed to pay wages to Plaintiff and FLSA Collective Members by time-shaving the hours worked by employees, in violation of the FLSA.

86. Defendant unlawfully kept a portion of the tips that Plaintiff and tipped FLSA Collective Members earned from customers, including by deducting from credit card tips amounts in excess of the processing fees Defendant actually paid, by requiring servers to make payments to the house, and by retaining undisclosed deductions from servers' cash tips, in violation of 29 U.S.C. § 203(m)(2)(B). See 29 C.F.R. § 531.52(b)(2).

87. Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

88. Defendant's unlawful conduct has been willful and intentional. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff and FLSA Collective Members overtime wages for all hours worked when Defendant knew or should have known such was due. Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

89. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

90. As a result of Defendant's willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage, overtime wages and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery

of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

91. In accordance with NYLL § 215(2)(b), Plaintiff has served, or will serve at or before the commencement of this action, notice of this action upon the Attorney General of the State of New York.

92. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**SECOND CAUSE OF ACTION**
***Violations of the New York Labor Law***
***(Plaintiff and the Class)***

93. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

94. At all times relevant, Plaintiff and the Class have been employees of Defendant, and Defendant has been an employer of Plaintiff and the Class within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

95. Defendant failed to pay Plaintiff and Class Members the full and proper minimum wage due to an invalid tip credit, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

96. Defendant failed to pay full and proper wages, including overtime wages to Plaintiff and Class Members for off-the-clock work, in violation of the NYLL.

97. Defendant failed to pay full and proper wages, including overtime wages to Plaintiff and Class Members by time-shaving the hours worked by employees, in violation of the NYLL.

98. Defendant failed to pay Plaintiff and Class Members spread-of-hours premium for workdays exceeding ten (10) hours, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

99. Defendant failed to pay Plaintiff and Class Members uniform maintenance pay, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

100. Defendant made unlawful deductions from the wages of Plaintiff and Class Members, in violation of NYLL, Article 6, § 193.

101. Defendant failed to pay Plaintiff and Class Members on a weekly basis, in violation of NYLL, Article 6, § 191.

102. Defendant unlawfully retained and/or distributed to non-tipped employees a part of the gratuities received by Plaintiff and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

103. Defendant failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiff and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

104. Defendant failed to provide Plaintiff and Class Members with proper wage notices and wage statements, in violation of NYLL, Article 6, § 195.

105. Defendant failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

106. As a result of Defendant's willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendant their unpaid minimum wage, unpaid wages for off-the-clock work, unpaid wages due to time-shaving, unpaid spread-of-hours premium, unpaid uniform maintenance pay, unlawful deductions, misappropriated gratuities, damages for untimely payment

of wages, statutory penalties, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**THIRD CAUSE OF ACTION**
***Retaliation in Violation of the Fair Labor Standards Act and the New York Labor Law***
***(Plaintiff Yanling Cao)***

107. Plaintiff Yanling Cao realleges and incorporates by reference all allegations in all preceding paragraphs.

108. Plaintiff Yanling Cao is an employee and a protected person within the meaning of the FLSA and NYLL and Defendant is a covered employer under the FLSA and NYLL.

109. The FLSA prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the FLSA. 29 U.S.C. § 215(a)(3).

110. The NYLL § 215 prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the NYLL.

111. Defendant unlawfully retaliated against Plaintiff Yanling Cao on the basis of her protected activities under the FLSA and NYLL by reducing her shifts, assigning her the worst sections and additional side work, and by terminating her employment shortly after she made a number of internal complaints regarding unpaid wages and tips.

112. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FLSA and NYLL, Plaintiff Yanling Cao has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

113. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FLSA and NYLL, Plaintiff Yanling Cao has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

114. At all relevant times, Defendant's unlawful discriminatory conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff Yanling Cao's protected rights under the FLSA and NYLL, for which she is entitled to an award of punitive damages.

115. Due to Defendant's violations of the FLSA and NYLL, namely, retaliation against Plaintiff Yanling Cao for engaging in protected activities, Plaintiff is entitled to recover from Defendant: (1) economic damages for lost wages; (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

***Violations of the New York City Earned Safe and Sick Time Act***

***(Plaintiff and the Class)***

116. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

117. At all times relevant, Plaintiff and the Class have been employees of Defendant, and Defendant has been an employer of Plaintiff and the Class within the meaning of the New York City Earned Safe and Sick Time Act, N.Y.C. Admin. Code §§ 20-911 et seq. ("ESSTA").

118. Defendant failed to provide Plaintiff and Class Members with paid safe and sick time, in violation of ESSTA.

119. Defendant failed to compensate Plaintiff and Class Members for sick time taken, in violation of ESSTA.

120. As a result of Defendant's violations of ESSTA, Plaintiff and the Class are entitled to recover from Defendant their unpaid safe and sick time, statutory damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with ESSTA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. Certification of this case as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d. An award of unpaid minimum wages due under the NYLL;

e. An award of unpaid overtime wages due under the FLSA and NYLL;

f. An award of unlawfully retained tips due under the FLSA and NYLL;

g. An award of unpaid spread-of-hours premium and uniform maintenance pay due under the NYLL;

h. An award of unlawful deductions and damages for untimely payment of wages due under the NYLL;

i. An award of statutory penalties as a result of Defendant's failure to provide proper wage notices and wage statements, pursuant to the NYLL;

j. An award of unpaid safe and sick time and statutory damages due under ESSTA;

k. An award of liquidated damages as a result of Defendant's willful failure to pay wages, pursuant to the FLSA or NYLL;

l. An award of damages against Defendant, in an amount to be determined at trial, to compensate Plaintiff Yanling Cao for all monetary and/or economic damages, including loss of past and future income, compensation and benefits;

m. An award of damages against Defendant, in an amount to be determined at trial, to compensate Plaintiff Yanling Cao for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress;

n. An award of punitive damages against Defendant for violation of Plaintiff Yanling Cao's rights, in an amount to be determined at trial;

o. Pre-judgment and post-judgment interest;

p. Reasonable attorneys' fees and costs of this action;

q. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and ESSTA;

r. An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

s. Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: November 10, 2026

Respectfully submitted,

**BROWN, KWON & LAM LLP**

By: *<u>/s/ William Brown</u>*

William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT**

I, YANLING CAO hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against BAYSIDE18, L.L.C. d/b/a MASAAKI, and/or related entities and individuals, to recover unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor Standards Act.

DocuSigned by:
FB4D25C7248F49A...

Name: Yanling Cao

Date: 10/19/2026